920 F.2d 861
 ST. PAUL FIRE & MARINE, INSURANCE COMPANY, Plaintiff-Appellee,
v.
John A. TINNEY, Lois McLeod, Mrs. Vicki L. Torsch, as
Executrix of the Estate of Theodore A. Torsch, deceased,
Mrs. Claude Willis, as Administratrix of the Estate of
Claude Willis, deceased, Defendants-Appellants,
Dr. Theodore Torsch, Claude Willis, William Green, Fannie
Green, Defendants.
 No. 89-7859.
 United States Court of Appeals,
Eleventh Circuit.
 Jan. 10, 1991.
 
 John A. Tinney, P.C., Roanoke, Ala., for defendants-appellants.
 Harry Cole, Hill, Hill, Carter, Franco, Cole & Black, Montgomery, Ala., for Vicki L. Torsch as Executrix.
 B. Boozer Downs, Birmingham, Ala., for plaintiff-appellee.
 Appeal from the United States District Court for the Middle District of Alabama.
 Before JOHNSON and HATCHETT, Circuit Judges, and DYER, Senior Circuit Judge.
 DYER, Senior Circuit Judge:
 
 
 1
 St. Paul Fire and Marine Insurance Company brought suit against Dr. Theodore Torsch and his patients Claude Willis, Lois McLeod, and William Green, seeking a declaratory judgment that there was no coverage under its claims made policy because there was no proper notice of claims made by Torsch of the patients' claims against him.[1] Torsch counterclaimed, asserting that St. Paul was guilty of bad faith in refusing to defend him. The district court granted St. Paul's motion for summary judgment, finding that (a) there was no coverage under the policy, and (b) that St. Paul was not guilty of bad faith. We reverse the judgment based upon the finding that there was no coverage, and we affirm the judgment based upon the finding that there was no bad faith.FACTS
 
 A. Background
 
 2
 St. Paul's claims made policy insuring Torsch against medical malpractice actions brought against him provides in pertinent part:
 
 
 3
 When is a claim made?
 
 
 4
 A claim is made on the date you first report an incident or injury to us or our agent. You must include the following information:
 
 
 5
 . Date, time and place of the incident
 
 
 6
 . What happened and what professional service you performed
 
 
 7
 . Type of claim you anticipate
 
 
 8
 . Name and address of injured party
 
 
 9
 . Name and address of any witness.
 
 
 10
 Torsch purchased the policy through the Lanier Agency of West Point, Georgia, a general sales agent of St. Paul. He dealt exclusively with Dick Jones of that agency.
 
 
 11
 Torsch treated or performed surgery on patient Willis in January 1987, and on patient McLeod in April 1986. On March 26, 1987, attorney John Tinney wrote and hand delivered a letter to Torsch stating:
 
 
 12
 I have been retained to represent Lois McLeod, Claude Willis, and William Green in connection with treatment you provided to these individuals for what you determined to be apparent cataract problems.
 
 
 13
 Please place your malpractice carrier on notice that a claim will be forwarded to your office in connection with each of these cases. A detailed summary of the allegations will be contained in the complaints which you will shortly receive a copy of. If you wish to discuss these matters with me I will be happy to discuss the same with you or your carriers.
 
 
 14
 I am unaware as to whether you have a claims made policy or other coverage so please provide your carrier with notice of these claims accordingly.
 
 
 15
 This notice of claims is being hand delivered to your office by my secretary at 2:45 o'clock P.M.E.S.T.
 
 
 16
 The following day Torsch wrote his insurance agent Dick Jones stating:
 
 
 17
 I received this note from an attorney today. It didn't make any sense to me; but I thought maybe I should drop you a line.
 
 
 18
 For some reason, Tinney's letter was not enclosed with Torsch's letter to Jones.
 
 
 19
 In May 1987, Torsch was served with suit papers in the Green case, which he sent to Jones along with the Tinney letter to him of March 26, 1987. Jones sent the Tinney letter, the Green suit papers, and a loss notice on Green to St. Paul, but he did not prepare loss notices on the Willis and McLeod cases. Malpractice actions were filed against Torsch by Willis in November 1987 and by McLeod in April 1988. Torsch died June 15, 1988, and his wife Vicki was substituted as executrix.
 
 B. Proceedings in the District Court
 
 20
 The district court granted St. Paul's motion for summary judgment, holding that Torsch had failed to give notice to St. Paul of the claims made against Torsch by Willis and McLeod and that there was no waiver or estoppel of its right to rely on the provisions of the policy. The court further held that St. Paul was not guilty of bad faith and therefore granted summary judgment for St. Paul on Torsch's counterclaim.
 
 ANALYSIS
 A. Review of Summary Judgment
 
 21
 The burden of proof rests with the party seeking summary judgment to prove that there is no dispute as to any material fact to enable that party to be entitled to a judgment as a matter of law. Combs v. King, 764 F.2d 818 (11th Cir.1985). Our review of the district court's grant of summary judgment is plenary. McDonald v. Hillsborough County School Board, 821 F.2d 1563 (11th Cir.1987).
 
 
 22
 B. Notice requirement under the claims made policy
 
 
 23
 The essence of the declaratory judgment complaint is that the claims by Torsch concerning Willis and McLeod, via Tinney's letter of March 26, 1987, did not comply with the requirements of the policy because it did not include the addresses of Willis and McLeod, the name and address of a witness, and the date, time and place of the incident.
 
 
 24
 The question presented therefore is whether Tinney's letter contained sufficient information to provide notice of the claims to St. Paul. We think it did.
 
 
 25
 There is no dispute that Tinney's letter of March 26, 1987, sent by Torsch to St. Paul's agent Jones, was received by St. Paul on May 18, 1987, prior to the expiration of the policy on September 4, 1987. Therefore, "a claim [was] made on the date [March 26, 1987] [Torsch] first report[ed] an incident or injury to [St. Paul] or [Jones]." This answers the query "When is a claim made?"
 
 
 26
 Next there is the requirement that certain information must be included. Tinney's letter related the professional services performed, the type of claims anticipated, and the names of the injured parties. The date, time and place of treatment by Torsch, the addresses of Willis and McLeod, and that of witnesses were not in Tinney's letter or provided by Torsch. While there can be no doubt that Tinney's letter put St. Paul on notice that Willis and McLeod were going to sue Torsch for medical malpractice if their cases were not settled, St. Paul contends that the missing information was so critical that there was no coverage under the policy and it was therefore relieved of its duty to defend Torsch. We disagree.
 
 
 27
 The purpose of requiring the information called for when a claim is made is to afford the insurer an opportunity to investigate. See Lee v. Prudential Ins. Co., 812 F.2d 1344 (11th Cir.1987). Hopkins v. Lawyers Title Ins. Corp., 514 So.2d 786, 788 (Ala.1986) (quoting 44 Am.Jur.2d Insurance, Sec. 1352 (1982)), states as a general rule that "No matter what the form of notice of loss may be, if it operates to bring the attention of the insurer to the loss or accident, sets forth the essential facts upon which liability of the insurer depends, and appears credible, it is sufficient".
 
 
 28
 We would be hard pressed to find a stronger statement of the likelihood of litigation against Torsch for medical malpractice than is contained in Tinney's letter of March 26, 1987, which was brought to the attention of St. Paul. The provision of the policy calling for background information was to assist St. Paul in the investigation of the claims so that St. Paul could either settle or prepare to defend litigation. This information, while helpful to the insurer, cannot be used as a trap for the unwary insured. Once the insurer is put on notice that there has been an incident, together with the essential facts upon which liability of the insurer depends, a claim is made. If there is a deficiency of investigative information called for by the policy (not pertinent to the underlying question of liability), the insurer may require it to be furnished. Should the insured unreasonably fail or refuse to provide the information sought, the insurer may have the right to deny liability, if it has suffered prejudice in not being able to properly investigate the claim.
 
 
 29
 St. Paul did nothing to suggest to Torsch that the missing information was pertinent to its investigation of the claims. Agent Jones admitted that Tinney's letter "alerted me to something". Supervisor Payne testified that in similar circumstances "we would make contact, and get back to him [the insured] if you hadn't already found out what had happened. And then you would proceed to investigate." St. Paul's claims representative Nellums acknowledged that Tinney had called her several times and told her that he represented Willis and McLeod, but she simply took the position that there was no loss notice covering them and that she was only concerned with the Green claim.
 
 
 30
 No more than a telephone call from St. Paul's claims representative to Torsch would have supplied the date, time, and place of treatment, the addresses of Willis and McLeod, and the addresses of witnesses, if any. St. Paul made no effort to contact Torsch or Tinney to obtain this or any other information concerning the malpractice claims.
 
 
 31
 We also note that this was a complete departure from the handling of two previous claims of malpractice against Torsch. In one case the claim was made by Torsch over the telephone and St. Paul then requested the information concerning his patient. In the other case Torsch sent St. Paul's agent a letter from an attorney representing Torsch's patients which contained no information with reference to the date, time and place of the incident, type of claim, address of the injured party or names and addresses of the witnesses. Nevertheless, St. Paul's claims representative called Torsch and the attorney to obtain the information and medical records. No formal written claims with the information called for by the policy was required in either case. St. Paul made no point of questioning coverage.
 
 
 32
 Since we find that there was coverage under the policy, it was error for the district court to enter summary judgment for St. Paul.
 
 C. Counterclaim for Bad Faith
 
 33
 Torsch contends through his personal representative that sufficient evidence was presented in support of the counterclaim for bad faith to require that the issue be submitted to a jury. We disagree. It is unnecessary to iterate the arguments of the parties concerning the question of coverage. Suffice it to say that St. Paul had a reasonably legitimate or arguable reason for its position, which, at the least, was debatable. National Security Fire & Casualty Co. v. Bowen, 417 So.2d 179 (Ala.1982).
 
 CONCLUSION
 
 34
 We find that there was coverage under the claims made policy of St. Paul and therefore reverse the summary judgment entered in its favor.
 
 
 35
 We affirm the summary judgment in favor of St. Paul on Torsch's counterclaim.
 
 
 36
 AFFIRMED in part, and REVERSED in part.
 
 
 
 [1]
 Green was later dismissed when St. Paul assumed the defense of Torsch on that claim