**Doris FRANCIS, et al., Plaintiffs,**

v.

**RIVERSIDE MEDICAL SERVICES, INC., et al., Defendants.**

**Civ. A. No. 90–74–2–MAC (WDO).**

United States District Court,
M.D. Georgia,
Macon Division.

March 2, 1995.

William A. Adams, Jr., Thomaston, GA, J. Robert Thompson, Atlanta, GA, for plaintiffs Doris Francis, Adelaide Harris, Anna Risper, Bertha Buchanan, Emma Weston, Marie Raines, John Reves, Mary Williamson, Lucy Rogers, Beatrice Reviere, Linda Nance Opheliaking, Agens King, Elnora Lockhart, Mary A. Green, Johnny Chaney, Kassie Kendall, Estate of Charity Walker, Annie Montgomery, Marchalin Parks, Janice Allen, Dor-

othy Kelly, Elaine Williams, Dollie Ragland, Katherine Middlebrooks, Estate of Anna Allen, Debbie Middlebrooks, Connie Woods.

Thomas C. James, III, Thomas F. Richardson, Gregory John Spicer, Macon, GA, for defendant Riverside Medical Services, Inc.

Thomas C. James, III, Macon, GA, for defendants Riverside Medical Services of Covington, C.L. Johnson, Joyce Ivey Johnson.

F. Kennedy Hall, Macon, GA, for defendants Hugh D. Sosebee, Harold G. Clarke.

Denmark Groover, Jr., Macon, GA, for defendants Charles H. Jones, Ocmulgee Fields, Inc.

Walter H. Bush, Jr., Macon, GA, for defendant W. Fred Herndon.

Kenneth Lee Millwood, Atlanta, GA, for defendants Martin, Snow, Grant & Napier, a Partnership, Edward J. Harrell.

### ORDER

OWENS, Chief Judge.

Before the court are motions for summary judgment filed by defendants Hugh D. Sosebee, Harold G. Clarke, Charles H. Jones, Joyce Ivey Johnson, and C.L. Johnson. After careful consideration of the arguments of counsel, the relevant case law, and the record as a whole, the court issues the following order.

### FACTS

In 1981, Convalescent Centers, Inc. ("CCI"), the parent corporation of three nursing homes located in Forsyth, Covington, and Thomaston, Georgia, made a decision to sell the three nursing homes. (Jones Aff. at 1–2; C.L. Johnson Aff. at 2.) Defendants Hugh D. Sosebee, Harold G. Clarke, Charles H. Jones, W. Fred Herndon, and T.L. Ivey were all shareholders in CCI. To minimize the tax consequences of the sale, CCI contacted a consulting company to prepare an Employee Stock Ownership Program ("ESOP") buyout. (Thompson Aff. Ex. 4.) Under this plan, four new corporations were formed: a parent corporation (Riverside Medical Services, Inc.) and three wholly-owned subsidiary corporations (Riverside Medical Services of Macon, Inc., Riverside Medical Services of Covington, Inc., and Riverside Medical of Thomaston, Inc.). (Jones Aff. at 2; C.L. Johnson Aff. at 2.) All of the stock of Riverside Medical Services, Inc. was owned by the Riverside Medical Services, Inc. ESOP ("Riverside ESOP"). Defendant Fred Herndon served as administrator of the Riverside ESOP from 1981 until 1986, at which time he was succeeded by C.L. Johnson.[1] (C.L. Johnson Aff. at 3.) Initially, Herndon also served as the sole director and president of Riverside Medical Services, Inc., as well as being an officer in each of the subsidiaries. American Trust Company of Hawaii, Inc. served as directed trustee of the ESOP pursuant to a trust agreement. In addition, the Riverside ESOP was qualified as an employee pension benefit plan under the Employee Retirement Income Security Act of 1974.

The ESOP buyout was financed in part by Industrial Revenue Bonds issued by Upson and Monroe Counties. (Jones Aff. at 2; C.L. Johnson Aff. at 2.) Pursuant to the ESOP buyout plan, Upson County and Monroe County acquired the assets of the nursing homes located in Forsyth and Thomaston in exchange for tax-free Industrial Revenue Bonds and then leased the assets to the newly formed Riverside corporations. However, the purchase of the Covington facility was financed by Georgia Federal Bank and through corporations owned by defendant Charles Jones. (Jones Aff. at 2.) As a result of the bond financing, Sosebee, Clarke, Jones, Herndon, and Ivey became secured creditors of the newly formed Riverside corporations.

In 1983, T.L. Ivey died. As a result of Ivey's death, Joyce Ivey Johnson, Ivey's daughter[2], became executrix of her father's

---

**1.** Prior to assuming this position, C.L. Johnson was the administrator of Riverside Medical Services of Covington, Inc. (C.L. Johnson Aff. at 2.) Johnson resigned from his position as ESOP administrator in January 1988. (C.L. Johnson Aff. at 3.)

**2.** Joyce Ivey Johnson is also the wife of C.L. Johnson.

estate and, therefore, responsible for the administration of the estate's assets, including the Industrial Revenue Bonds owned by her father. (J.I. Johnson Aff. at 2–3.) At the time Johnson assumed the duties of executrix, she was also employed by Riverside Medical Services of Covington, Inc. (J.I. Johnson Aff. at 2.)

In 1986, the nursing home located in Monroe County began to experience problems with the State licensing department. (Hampton Dep. at 3.) As a result of these problems, Riverside Medical Services, Inc. hired Charles Hampton as a consultant. (Hampton Dep. at 3.) Although Hampton was not officially designated as an officer of Riverside Medical Services, Inc., the administrator of each nursing home reported to him. (Hampton Dep. at 110.)

In 1988, because of financial problems that had resulted in Riverside Medical Services Inc.'s insolvency, a decision was made by Charles Hampton and the Riverside Board of Directors to sell the three nursing homes to Care–More, Inc. (Hampton Dep. at 37, 89, 112.) C.L. Johnson, however, as ESOP administrator and President of Riverside Medical Services, Inc., opposed the decision to sell the nursing homes and resigned his positions in protest. (C.L. Johnson Aff. at 6.) Johnson's wife, Joyce Ivey Johnson, also resigned her position with Riverside Medical Services of Covington, Inc. (J.I. Johnson Aff. at 4.)

Completion of the sale required shareholder approval. Accordingly, Charles Hampton met with the employees of the Monroe County and Newton County facilities, while Sue Estes, administrator of the Upson County facility, met with the employees located in Upson County. (Hampton Dep. at 99.) The employees were informed, in person and by letter, that subject to shareholder approval, Riverside Medical Services Inc. had agreed to sell the three nursing home facilities to Care–More, Inc. for a purchase price of $5,212,000.00. (Amend. Compl. Ex. 3.) The employees were also informed that the corporation was insolvent, and that Care–More, Inc. had agreed to retain all employees of Riverside after the sale. (Hampton Dep. at 99–101.) A majority of the employee-stockholders approved the sale. Accordingly, on April 1, 1988, the three nursing home facilities were sold to Care–More, Inc.

Due to the insolvency of Riverside Medical Services, Inc., the sale did not produce enough cash to pay all of the corporation's creditors. As secured creditors, defendants did receive some value for their interests. However, defendants were not paid the full face amount of their bonds. (Jones Aff. at 3.) Further, as a result of the insolvency of Riverside and the obligations to creditors, the ESOP participants did not receive any value for their shares in Riverside Medical Services, Inc.

On March 2, 1990, twenty-eight participants in the Riverside ESOP brought suit against Riverside Medical Services, Inc. and its three subsidiary corporations, C.L. Johnson, Joyce Ivey Johnson, Sue Estes, Genevieve Jones, Hugh D. Sosebee, Charles H. Jones, W. Fred Herndon, Harold G. Clarke, American Trust Company of Hawaii, Inc., Walnut Street Investors, Inc., and Care–More, Inc. In their complaint, plaintiffs allege the actions of defendants violated Section 10(b) of the Securities and Exchange Act of 1933, the Racketeer Influenced and Corrupt Organizations Act, the Employee Retirement Income Security Act of 1974, and various state law provisions. Subsequently, the court dismissed without prejudice plaintiffs' supplemental state law claims.

On March 16, 1994, defendants Hugh Sosebee and Harold G. Clarke filed a joint-motion for summary judgment as to plaintiffs' claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Subsequently, defendants Charles H. Jones, Joyce Ivey Johnson, and C.L. Johnson filed motions for summary judgment in which they adopted the statement of facts and arguments set forth by Sosebee and Clarke in their motion. On October 28, 1994, the court granted the motions for summary judgment filed by Sosebee, Clarke, Jones, Joyce Ivey Johnson, and C.L. Johnson.

On November 29, 1994, defendants Sosebee and Clarke filed a joint-motion for summary judgment on plaintiffs' remaining claims under Section 10(b) of the Securities

and Exchange Act of 1933, and the Racketeer Influenced and Corrupt Organizations Act. Defendants Jones, Joyce Ivey Johnson and C.L. Johnson have joined in this motion. Plaintiffs have responded to defendants' motions, and the motions are now before the court for decision.

## DISCUSSION

### I. Summary Judgment Standard

A party moving for summary judgment under Rule 56 of the Federal Rules of Civil Procedure bears the initial burden of "presenting evidence which, if uncontradicted, would entitle it to a directed verdict at trial...." *Walker v. Darby,* 911 F.2d 1573, 1576 (11th Cir.1990); *see also St. Paul Fire & Marine Insurance Co. v. Tinney,* 920 F.2d 861, 862 (11th Cir.1991) ("The burden of proof rests with party seeking summary judgment to prove that there is no dispute as to any material fact ..."). "If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to come forward with sufficient evidence to rebut this showing...." *Avirgan v. Hull,* 932 F.2d 1572, 1577 (11th Cir.1991). Further, "[a] party opposing summary judgment may not rest upon the mere allegations or denials in its pleadings. Rather, its responses, either by affidavits or otherwise as provided by the rule, must set forth specific facts showing that there is a genuine issue for trial." *Walker,* 911 F.2d at 1576–77.

### II. Section 10(b)

Section 10(b) of the Securities Exchange Act of 1933 provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange ... [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or ap-

propriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b). Rule 10b–5, adopted by the Securities and Exchange Commission, states:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person

in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5 (1994).

"A preliminary task in every 10b–5 case is to find some 'security' that was the object of the activities in question." *Woodward v. Metro Bank of Dallas,* 522 F.2d 84, 91 (5th Cir.1975); *see also Jungck v. Nanz,* 723 F.Supp. 1316, 1321 (E.D.Wis.1989). According to plaintiffs, the securities at issue in the case *sub judice* were those owned by the participants in the Riverside ESOP. Plaintiffs' allegations regarding these securities concern the 1988 sale of the three nursing homes by Riverside Medical Services, Inc. Therefore, as plaintiffs have identified the securities at issue, the court must next determine whether sufficient evidence exists to establish the elements of a claim based on section 10(b) and Rule 10b–5.

■ " '[T]here are three basic elements to be pled and proved in 10b–5 actions: (1) conduct by the defendants proscribed by the rule; (2) a purchase or sale of securities by the plaintiffs "in connection with" such proscribed conduct; and (3) resultant damages to the plaintiffs.' " *Woodward,* 522 F.2d at 93; *see also Levine v. Diamanthuset, Inc.,* 950 F.2d 1478, 1485 (9th Cir.1991); *Falls v.*

*Fickling,* 621 F.2d 1362, 1365 (5th Cir.1980); *Jungck,* 723 F.Supp. at 1321.

■ The first element of a section 10(b) claim requires a plaintiff to prove "conduct by the defendants proscribed by the rule." In their response to defendants' motions for summary judgment, plaintiffs have made broad allegations regarding defendants Sosebee, Clarke, Jones, Joyce Ivey Johnson, and C.L. Johnson's involvement in the 1988 sale of the Riverside facilities. However, as this court stated in its order of October 28, 1994, plaintiffs' allegations "rest[ ] on little evidence and much speculation." (Order of Oct. 28, 1994 at 10.)[3]

As this court has previously held[4], there is no evidence that defendants Sosebee, Clarke, Jones, Joyce Ivey Johnson, and C.L. Johnson were involved in the 1988 sale of the Riverside facilities in any capacity other than that of secured creditors. Further, plaintiffs have failed to set forth any evidence that defendants Sosebee, Clarke, Jones, Joyce Ivey Johnson, and C.L. Johnson either "employ[ed] any device, scheme, or artifice to defraud, . . . ma[de] any untrue statement of a material fact[,] . . . omit[ted] to state a material fact necessary in order to make the statements made . . . not misleading, or . . . engage[d] in any act, practice, or course of

business which operate[d] . . . as a fraud or deceit upon any person." 17 C.F.R. § 240.10b–5.

"For issues on which the non-moving party will bear the burden of proof at trial, the non-moving party must either point to evidence in the record or present additional evidence 'sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.' " *Hammer v. Slater,* 20 F.3d 1137, 1141 (11th Cir.1994). Plaintiffs, however, have failed to do so. Accordingly, defendants Sosebee, Clarke, Jones, Joyce Ivey Johnson, and C.L. Johnson's motions for summary judgment on plaintiffs' claims under section 10(b) of the Securities Exchange Act of 1933 are **GRANTED.**

### III. Racketeer Influenced and Corrupt Organizations Act

The Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.,* provides, in part: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).[5]

---

3. In fact, the Statement of Disputed Material Facts attached to plaintiffs' response to defendants' motions for summary judgment contains no citations to the record. Local Rule 3.7 requires that "[t]he papers opposing a motion for summary judgment . . . include a separate, short and concise statement of material facts as to which it is contended that there exists a genuine issue of material fact to be tried, *including specific reference to those parts of the pleadings, depositions, answers to interrogatories, admissions on file and affidavits which support such contentions.*"

4. On October 28, 1994, this court granted defendants Sosebee, Clarke, Jones, Joyce Ivey Johnson, and C.L. Johnson's motions for summary judgment on plaintiffs' claims under ERISA. In so doing, the court held that "plaintiffs have simply failed to put forward any evidence that defendants Sosebee, Clarke, Jones, and Joyce Ivey Johnson, either as individuals or as participants in a conspiracy, retained any 'control or authority over the plan's management, administration, or assets. . . .' " (Order of Oct. 28, 1994 at 10–11.) Further, the court held that "there is absolutely no evidence that [C.L. Johnson] used []his position [as administrator of the ESOP] to

facilitate the 1988 sale of the Riverside facilities to Care-More, Inc." (Order of Oct. 28, 1994 at 12.)

5. "Racketeering activity" is defined as:

(A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in narcotic or other dangerous drugs, which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery), section 224 (relating to sports bribery), sections 471, 472, and 473 (relating to counterfeiting), section 659 (relating to theft from interstate shipment) if the act indictable under section 656 is felonious, section 664 (relating to embezzlement from pension or welfare funds), sections 891–894 (relating to extortionate credit transactions), section 1029 (relating to fraud and related activity in connection with access devices), section 1084 (relating to the transmission of gambling information), section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1344 (relating to fi-

██ "To state a claim under RICO a plaintiff must allege each of the following four elements: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Durham v. Business Management Associates*, 847 F.2d 1505, 1511 (11th Cir.1988). Under RICO, a pattern of racketeering activity consists of "at least two acts of racketeering activity. . . ." 18 U.S.C. § 1961(5). However, "two isolated acts of racketeering activity do not constitute a pattern; rather, to establish a pattern, there must be a showing of more than one racketeering activity and the threat of continuing activity." *Bank of America National Trust & Savings Association v. Touche Ross & Co.*, 782 F.2d 966, 971 (11th Cir.1986).

██ In the case *sub judice*, there is simply no evidence that defendants Sosebee, Clarke, Jones, Joyce Ivey Johnson, and C.L. Johnson committed any act of "racketeering activity" as defined by 18 U.S.C. § 1961(1). Plaintiffs have alleged that "there is documentary evidence which supports the existence of numerous acts of common-law fraud, tax fraud, Medicaid fraud, fraud on the SBA, mail fraud, embezzlement, breach of fiduciary duty, ERISA fraud, conversion of ERISA assets, and securities fraud." (Pls' Br. at 6.) However, the court can find no evidence in the record to support these allegations. Further, plaintiffs have not cited the court to any portions of the record which would support their allegations of racketeering activity. *See Martin v. Commercial Union Insurance*

*Co.*, 935 F.2d 235, 238 (11th Cir.1991) ("The party opposing the motion [for summary judgment] must present specific facts in support of its position and cannot rest upon allegations or denials in its pleadings"). Accordingly, defendants Sosebee, Clarke, Jones, Joyce Ivey Johnson, and C.L. Johnson's motions for summary judgment on plaintiffs' claims under the Racketeer Influenced and Corrupt Organizations Act are **GRANTED.**

### CONCLUSION

Defendants Hugh D. Sosebee, Harold G. Clark, Charles H. Jones, Joyce Ivey Johnson, and C.L. Johnson's motions for summary judgment are hereby **GRANTED.** In addition, plaintiffs' renewed motion under Rule 56(f) of the Federal Rules of Civil Procedure is **DENIED.**

---

nancial institution fraud), sections 1461–1465 (relating to obscene matter), section 1503 (relating to obstruction of justice), section 1510 (relating to obstruction of criminal investigations), section 1511 (relating to the obstruction of State or local law enforcement), section 1512 (relating to tampering with a witness, victim, or an informant), section 1513 (relating to retaliating against a witness, victim, or an informant), section 1951 (relating to interference with commerce, robbery, or extortion), section 1952 (relating to racketeering), section 1953 (relating to interstate transportation of wagering paraphernalia), section 1954 (relating to unlawful welfare fund payments), section 1955 (relating to the prohibition of illegal gambling businesses), section 1956 (relating to the laundering of monetary instruments), section 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity), section 1958 (relating to the use of interstate commerce facilities in the commission of murder-for-hire), sec-

tion 2312 and 2313 (relating to interstate transportation of stolen motor vehicles), sections 2314 and 2315 (relating to interstate transportation of stolen property), section 2321 (relating to trafficking in certain motor vehicles or motor vehicle parts), sections 2341–2346 (relating to trafficking in contraband cigarettes), sections 2421–24 (relating to white slave traffic), (C) any act which is indictable under title 29, United States Code, section 186 (dealing with restrictions on payments and loans to labor organizations) or section 501(c) (relating to embezzlement from union funds), (D) any offense involving fraud connected with a case under title 11, fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in narcotic or other dangerous drugs, punishable under any law of the United States, or (E) any act which is indictable under the Currency and Foreign Transactions Reporting Act. . . .
18 U.S.C. § 1961(1).