Agnes LANDRY and Kevin Landry, Respondents,

v.

INTERMED INSURANCE COMPANY, et al., Appellant.

No. WD 69076.

Missouri Court of Appeals, Western District.

June 16, 2009.

Application for Transfer to Supreme Court Denied July 28, 2009.

Application for Transfer Denied Oct. 6, 2009.

Jared J. Robertson, Esq., and Co–Counsel Brian D. Malkmus, Esq., Springfield, MO, for appellant.

Matthew E. Birch, Esq., Kansas City, MO, for respondent.

Before Division Two: JOSEPH P. DANDURAND,[1] P.J., HAROLD L. LOWENSTEIN and JAMES M. SMART, JJ.

HAROLD L. LOWENSTEIN, Judge.

## I. INTRODUCTION

Agnes and Kevin Landry brought a malpractice suit against Dr. Gary Gaddis and his employer, Metro Emergency Physicians, L.L.C. ("MEP"). Dr. Gaddis and MEP made a demand on their insurer, Intermed Insurance Company ("Intermed"), to provide a defense and pay all sums for which they might be liable. Intermed denied coverage. Dr. Gaddis and MEP agreed with Landry to settle the claim for $2,000,000, and the trial court entered a judgment for the amount agreed

---

1. Judge Dandurand was a member of the court when this case was submitted; however, he has since resigned from the court.

upon by the parties. Thereafter, Landry brought an equitable garnishment action against Intermed, pursuant to section 379.200,[2] to satisfy the judgment entered against Dr. Gaddis and MEP. Both parties filed motions for summary judgment. The trial court denied Intermed's motion and granted summary judgment in Landry's favor. Intermed appeals. The sole issue before this court is whether Dr. Gaddis and MEP provided sufficient notice of Landry's incident to Intermed prior to the expiration of the policy period, thereby triggering coverage of Landry's claim.

## II. FACTS

On April 15, 2003, Agnes Landry ("Landry") reported to the emergency department at St. Luke's hospital due to chest pain and other symptoms. Dr. Gaddis ("Gaddis"), a member of MEP, was the emergency department physician on duty and treated Landry upon her arrival. Landry was suffering from myocardial infarction ("MI"); however, Gaddis initially misdiagnosed Landry's condition, resulting in a delay in proper treatment. The misdiagnosis and delay caused Landry permanent heart damage. Gaddis later reported his misdiagnosis of Landry's condition to Dr. John Lorei. Dr. Lorei ("Lorei"), the clinical director of MEP, was designated by MEP's members to report all medical incidents and claims to their insurer, Intermed.

Gaddis and MEP purchased a "claims made" professional liability insurance policy from Intermed that provided coverage for claims made during the policy period of January 1, 2002, through January 1, 2004. The policy included coverage for Gaddis, in the amount of $1,000,000 per medical incident, and MEP for $1,000,000 per medical incident.

On December 29, 2003, a few days before the insurance policy with Intermed was set to expire, Lorei compiled a list of approximately one-hundred incidents that occurred under the care of MEP physicians throughout the preceding year. The list contained the following information: (1) Doctor; (2) Patient Name; (3) Estimated Date of Service; and (4) Allegation. Included on the list was information regarding Gaddis's misdiagnosis of Landry's condition, which provided: (1) Gaddis; (2) Landry, Agnes; (3) April 15, 2003; and (4) Missed acute MI. The list was emailed to Intermed and caused a series of correspondence between Intermed and Lorei. Intermed stated that the information provided was insufficient to trigger coverage for any of the incidents on the list. Intermed stated that, in addition to the information on the list, coverage for any of the incidents on the list required a narrative of the emergency room visit, the procedures performed, the outcome, and why the incident might turn into a claim. Intermed requested this additional information by the end of the policy period. Lorei declined Intermed's request. Generally, Lorei stated that the list provided sufficient information to trigger coverage, that providing the additional information before the policy period expired would be improbable and time consuming, and that he could provide additional information over the next few weeks or in the event that a lawsuit or demand for money arose from any of the incidents. The preceding correspondence between Lorei and Intermed occurred prior to the expiration of the policy period, set to occur at 12:01 a.m. on January 1, 2004.

On April 23, 2004, Landry filed a lawsuit against Gaddis and MEP seeking recovery for damages arising out of Gaddis's misdiagnosis of her condition. Gaddis and

---

**2.** All statutory references are to RSMo 2000 unless otherwise indicated.

MEP sent a demand letter to Intermed requesting a defense and payment of any damages for which they might be liable. The letter stated that Intermed received notice that Gaddis had knowledge of facts which could reasonably be expected to give rise to a claim, via Lorei's list of incidents, thus triggering coverage of Landry's claim under the policy. Intermed, however, denied coverage, stating that Landry's incident was not properly reported before the policy period expired.

Sometime thereafter, Gaddis and MEP settled Landry's claim for $2,000,000 as damages. As part of the settlement agreement, Landry agreed to pursue collection against Intermed under Gaddis's and MEP's insurance policy. After judgment was entered by the trial court on the settlement agreement, Landry filed an equitable garnishment action against Intermed, pursuant to section 379.200, seeking to satisfy the $2,000,000 judgment. Landry and Intermed both filed a motion for summary judgment. Landry argued that Intermed improperly denied coverage to Gaddis and MEP under the claims made policy because Lorei's list of incidents triggered coverage of Landry's claim. Intermed countered that the claims made policy only provided coverage of claims or potential claims properly reported during the policy period, and Gaddis failed to properly report either a claim or potential claim arising out of his care of Agnes Landry during the applicable policy period. The trial court agreed with Landry and entered an order granting summary judgment in her favor. Intermed appeals the trial court's ruling.

### III. STANDARD OF REVIEW

This court reviews a trial court's decision sustaining a motion for summary judgment *de novo*. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). "The criteria on appeal for testing the propriety of summary judgment are no different from those employed by the trial court to determine the propriety of sustaining the motion initially." *Id.* Summary judgment will be upheld on appeal if: (1) there is no genuine issue of material fact, and (2) the moving party is entitled to judgment as a matter of law. *Id.* at 380. "As the trial court's judgment is founded on the record submitted and the law, [this] court need not defer to the trial court's order granting summary judgment." *Id.* at 376. This court reviews the record in the light most favorable to the party against whom judgment was entered and affords that party the benefit of all reasonable inferences from the record. *Id.* "Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion." *Id.* The moving party bears the burden of establishing a legal right to judgment and the absence of any genuine issue of material fact required to support the judgment. *Id.* at 378.

### IV. DISCUSSION

 In the sole point on appeal, Intermed states that the trial court erred in sustaining Landry's motion for summary judgment because Intermed properly denied coverage to Gaddis and MEP. Intermed argues the notice provided by Gaddis and MEP regarding Landry's incident was insufficient to trigger coverage under the "claims made" policy.

 This court's analysis of Intermed's sole point is primarily based on the law related to "claims made" insurance policies. There are essentially two types of professional liability policies: claims made policies and occurrence policies. *Continental Cas. Co. v. Maxwell,* 799

S.W.2d 882, 886 (Mo.App.1990). Under an "occurrence" policy, coverage is triggered by negligent acts or omissions that occur during the policy period, irrespective of when the acts or omissions are discovered and reported to the insurer. *Id.* On the other hand, under a "claims made" policy, coverage is triggered when the negligent act or omission is *discovered and reported* to the insurer during the applicable policy period, regardless of when the act or omission occurred. *Id.* Claims made policies place special reliance on notice. Notice must be given to the insurer during the policy period. If the insured does not give notice within the contractually required policy period, there is simply no coverage under a claims made policy, whether or not the insurer was prejudiced. *Id.* at 886–87. This is because the event which invokes coverage in a claims made policy is transmittal of notice of the claim to the insurer. *Id.* at 886. "The very essence of a claims made policy is notice to the carrier within the policy period." *Id.* at 887.

For the purposes of this case, it is important to highlight that coverage under most claims made policies is triggered when a *negligent act or omission* is discovered and reported to the insured during the policy period. *Id.* at 886. Claims made policies often provide coverage when the insured provides notice of negligent acts or omissions *not yet* in litigation. *Id.*; *F.D.I.C. v. St. Paul Fire & Marine Ins. Co.,* 993 F.2d 155, 158 (8th Cir.1993). This provides additional protection for the insured, extending coverage to a lawsuit not brought until long after the policy has expired, so long as the insured provides *notice* to the insured during the policy period of *potential* claims. *F.D.I.C. v. St. Paul Fire and Marine Ins. Co.,* 993 F.2d at 158. This emphasizes the reciprocal responsibility of the insured to report all acts and occurrences that could become future claims. *Id.* "[T]he notice provision

requirement sets the parameters of coverage under the policy." *Id.*

In this case, the Intermed policy held by Gaddis and MEP is a claims made policy. The policy provides coverage for claims made during the policy period of January 1, 2002 through January 1, 2004, and requires that the insured provide notice of any claims during the policy period in order to trigger coverage.

There is no dispute that Intermed received Lorei's email during the policy period and that the information conveyed to Intermed regarding Landry's incident was: (1) Gaddis; (2) Landry, Agnes; (3) April 15, 2003; and (4) Missed acute MI. The essence of Intermed's contention is that the preceding information did not comply with the notice requirements of the policy because it did not contain specific information required by the policy. The question presented, therefore, is whether the information contained in Lorei's email provided sufficient notice to trigger coverage of Landry's claim.

Under the section entitled "Coverage Agreements" in the policy, Intermed agreed to pay the following on behalf of Gaddis and MEP:

> All sums which the insured shall become legally obligated to pay as damages because of bodily injury arising out of the rendering of, or failure to render, professional services, occurring subsequent to the retroactive date, *for which claim is first made against the insured and reported to [Intermed] during the policy period . . .*

(Emphasis added.) The policy further contains a section entitled "Definitions" to clarify the language used in the coverage section of the policy. The definitions section defines "claim" as a "demand made upon the insured to pay money because of the insured's alleged acts or omissions."

Directly following the definition of "claim" is the definition of "when a claim is to be considered as first made." This definition sets the parameters of coverage and provides as follows:

"when a claim is to be considered as first made" means a claim for bodily injury shall be considered as first made at the earlier of the following times:

(a) When the insured first gives written notice to [Intermed] that a claim has been made, or

(b) When the *insured* has *knowledge of* (or becomes aware of) *facts* which could *reasonably* be *expected* to *give rise to a claim* under this policy and shall *give written notice to* [Intermed] *during the policy period.*

(Emphasis added.)

Under the foregoing provisions, coverage is triggered when the insured provides written notice of either a demand for money made upon the insured, according to subsection (a), or knowledge of facts which could reasonably be expected to give rise to a demand for money, according to subsection (b).

Because Landry did not make a demand for money until April 23, 2004, long after the expiration of the policy period, Gaddis and MEP rely on subsection (b). Applying subsection (b) to the coverage agreement, the policy essentially extends coverage over all sums which the insured shall become legally obligated to pay as damages because of bodily injury arising out of the rendering of professional services when the insured provides written notice of facts reasonably expected to give rise to a claim under policy. "The general rules for interpretation of other contracts apply to insurance contracts as well ... where insurance policies are unambiguous, they will be enforced as written." *Todd v. Mo. United Sch. Ins. Council*, 223 S.W.3d 156, 160 (Mo. banc 2007) (internal quotation marks and citations omitted).

Here, Intermed was provided written notice during the policy period of facts reasonably expected to give rise to a claim, via Lorei's email informing Intermed that Gaddis misdiagnosed Landry's MI. The record demonstrates that Intermed was informed that the incident might give rise to a claim. After Lorei's correspondence with Intermed, Intermed requested an explanation as to why the incidents might result in a claim. Lorei responded, stating that the reason the incidents might result in a claim was either "a misdiagnosis or a bad outcome."

Lorei further stated:

None of these [incidents] have plaintiff's attorneys involved with at this point in time, nor have there been demands for compensation at this point in time. These are not claims. They are complaints or concerns about treatment rendered, and I feel that my disclosure of these incidents is adequate notification to Intermed at this time which places the responsibility for potential future claims for these incidents entirely within Intermed's domain. I will be happy to print out the charts and known correspondence for each of these incidents for Intermed after the first of the year, but I feel strongly that these incidents have been adequately reported to Intermed . . .

Despite the foregoing notice as to why Landry's incident might result in a claim, Intermed further argues that Lorei's email failed to provide certain specific information, as required by the "Assistance and Cooperation" clause in the policy, which provides:

(a) The insured shall give written notice to the company as soon as practicable of any claim made against the insured or of any facts which could reasonably be expected to give rise to a claim. *The notice shall identify the insured and*

*contain reasonably obtainable information with respect to the time, place and circumstances of the injury, including the names and addresses of the injured and of available witnesses and the extent of the type of claim anticipated.* If a claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by the insured or the insured's representative.

(Emphasis added.) Essentially, Intermed argues that the notice provided was insufficient to trigger coverage under the preceding provision. In Missouri, there is a dearth of case law interpreting specific notice requirements, where the insurer challenged the form of notice provided by the insured. Other jurisdictions have held that "[t]he purpose of requiring the information called for when a claim is made is to afford the insurer an opportunity to investigate." *St. Paul Fire & Marine Ins. Co. v. Tinney,* 920 F.2d 861, 863 (11th Cir.1991). Further, " '[n]o matter what the form of notice of loss may be, if it operates to bring the attention of the insurer to the loss or accident, sets forth the essential facts upon which liability of the insurer depends, and appears credible, it is sufficient.' " *Id.* (citations omitted).

In this case, the information called for by the "assistance and cooperation" clause was essentially supplied by Lorei's email correspondence with Intermed. Lorei related the identity of the insured; the time, place, and circumstances of the injury; the name of the injured; and the extent of the type of claim anticipated. Particularly telling here is the insured's declaration to the insurance company that the "allegation" by the patient was a "missed" diagnosis of acute myocardial infarction. The only information absent from Lorei's notice is the address of the insured. Nothing suggests, however, that such information was not "reasonably obtainable," as re-

quired by the preceding provision. "If there is a deficiency of investigative information called for by the policy ..., the insurer may require it to be furnished." *Id.* Intermed was put on notice of Landry's incident and the essential fact that liability might arise from Gaddis's misdiagnosis of Landry's condition. In addition, Lorei explained his willingness to subsequently provide additional investigative information requested by Intermed over the following weeks. As a result, Intermed was provided proper notice during the policy period and was not denied the opportunity to further investigate Landry's incident.

Once the insurer is put on notice that there has been an incident, together with the essential facts upon which liability of the insurer depends, coverage is triggered under the policy. Coverage of Landry's claim was triggered during the policy period, and therefore, the trial court properly granted Landry's motion for summary judgment. The judgment of the trial court is affirmed.

All Concur.